### COVEL MFG. CO. v. RICH et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1905.)

No. 1,153.

PATENTS—INVENTION—SAW SHARPENING MACHINES.

> The Schofield patents, Nos. 654,843, 654,844, and 654,845, and the Filstrup and Schofield patent, No. 669,251, all relating to improvements in saw-sharpening machines, are void for lack of patentable invention in view of the prior art, in which the same devices were found in use in saw-swaging machines.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The appellant is the owner of patents No. 654,843, No. 654,844, and No. 654,845, issued July 31, 1900, to Schofield, and No. 669,251, issued March 5, 1901, to Filstrup and Schofield. They all relate to improvements in connection with saw-sharpening machines. Infringement was admitted if the claims were valid. The Circuit Court dismissed the bill for want of equity on the ground that the claims were void for lack of invention.

The claims relied on are these:

Patent No. 654,843: "(3) In a saw-sharpening machine, the combination with the frame thereof, of a vertically-movable slide connected with the front end of the frame, means for adjusting said slide, a stop-carrying bar fixedly secured to said slide, stops thereon, and a guide-bar pivotally supported from said slide and limited in movement on its pivot by said stops, substantially as and for the purpose set forth.

"(4) In a saw-sharpening machine, the combination with a frame provided at its front end with a vertical guide-channel, a slide movable in said channel, a stop-bar secured to said slide, adjustable stops connected with said bar, a guide-bar pivotally supported from said slide and limited in movement by said stops, and means for raising and lowering said slide, substantially as and for the purpose set forth."

Patent No. 654,844: "(5) In a saw-grinding machine, the combination with a frame provided at its front end with a bearing-block for a feed-arm, of a feed-arm provided with a feed-finger with a replaceable horizontal bearing-

block, and a replaceable vertical bearing-block serving to hold said horizontal bearing-block in place, substantially as and for the purpose set forth."

Patent No. 654,845: "(5) In a saw-support, the combination of a suitable base, a stem projecting upwardly therefrom, means for raising and lowering said stem, a head carried by said stem provided with two stops, and a bar-form saw-bearing pivoted on a transversely-extending pivot intermediate said stops and left free to swing in the plane of the saw, substantially as and for the purpose set forth."

Patent No. 669,251: "(3) In a saw-sharpening machine for operating upon band-saws having teeth on each edge, said machine having a shaft for communicating motion directly or indirectly to the grinding-wheel arbor, a sleeve journaled on said shaft, a pulley secured to said sleeve through the medium of which said sleeve is rotated, a pulley rotated through the medium of said sleeve, a pulley journaled on said shaft, a counter-pulley, means for communicating motion from said sleeve-actuated pulley to said counter-pulley and back in the reverse direction to the pulley journaled on said shaft, and means for connecting either one of said last-named pulleys to cause said shaft to rotate therewith, substantially as and for the purpose set forth.

"(5) In a saw-sharpening machine for operating upon band-saws having teeth on each edge, said machine having a shaft for communicating motion directly or indirectly to the grinding-wheel arbor, a sleeve journaled upon said shaft, a pulley through the medium of which said sleeve is rotated, a pulley rotated through the medium of said sleeve, a pulley journaled on said shaft, a clutch movable longitudinally of said shaft, and serving to communicate motion to the shaft, clutch members connected with the sleeve-actuated pulley and the pulley journaled on said shaft, means for shifting the clutch on said shaft to bring the same into engagement with either of said clutch members as desired, and means for communicating a reverse motion from the sleeve-actuated pulley to the pulley journaled on said shaft, substantially as and for the purpose set forth.

"(6) In a saw-sharpening machine for operating upon band-saws having teeth on each edge, said machine having a shaft of the nature described, a sleeve journaled on said shaft, a pulley for communicating motion to said sleeve, a pulley actuated by said sleeve, a clutch member connected with said last-named pulley to rotate therewith, a clutch, F, keyed to said shaft, a pulley, E, having a clutch member, a shifting-lever, F[3], and means for communicating motion in a reverse direction from the sleeve-actuated pulley to the pulley journaled on said shaft, substantially as described."

The following, among many prior patents, were cited: No. 98,695, January 11, 1870, to Kinney; No. 392,610, November 13, 1888, to Hoffman; and No. 468,470, February 9, 1892, to Watson.

John H. Lee, for appellant.

Charles C. Bulkley, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

1. The device of patent No. 654,843 is an improved saw support for use in sharpening band-saws that have teeth on both edges. In claim 3 a vertical channel is secured to the sharpening machine under the grinding wheel. Within the channel is a slide that can be moved up and down. Attached to the slide, horizontally and in line with the saw as it is moved forward tooth by tooth under the grinding wheel, are two bars, the lower one rigid and the upper pivoted. On the upper side of the lower bar are stops that limit the tilting of the upper bar which supports and guides the saw. In claim 4 the stops are adjustable.

The band-saw with teeth only on one edge can be brought to the

proper position under the grinding wheel without the use of a tilting support, because the back of the saw presents a smooth and level edge that can pass along on a fixed horizontal support without difficulty. But the double band-saw is liable to have its teeth worn down unevenly, and so, while the teeth on one edge are being sharpened, the newly sharpened teeth on the lower edge, if not of equal length from the center of the saw, would more likely catch or be injured on a rigid support than on a tilting one, because the tilting support affords a better bearing for a greater number of teeth.

In 1900 Schofield could not have obtained a patent on a support for a single-toothed band-saw, consisting of a base or standard, a slide or stem movable up and down therein, and a seat on top of the stem. When the double-toothed band-saw came into use, did it require the exercise of the inventive faculty to pivot the seat on the stem?

In the saw filers' room were three machines, one for gumming, one for swaging, and one for sharpening, saws. They were handled by the same men, and each machine played a part in renewing saws for further use. As a part of, or in connection with, each machine a support or bearing was necessary to hold the saw in proper relation to the gumming, swaging, or sharpening instruments. In Watson's and also in Kinney's swaging machine the tilting support was found. To move this support over to the sharpening machine, without change of structure (looking to the law of the structure, and not to mere size, location, or alteration of parts within obvious or known equivalents), was only extending its use. It was not even a new use, taking the structure for what it is, namely, a support or bearing for the saw while its teeth are being operated upon, and not regarding the particular operation.

The adjustable stops to limit the tilting. The patent does not disclose how these are to be used. If they are to be screwed up to stop all tilting while the machine is in operation, a rigid support would result and the advantages of a tilting support be lost. If that is the object, the means of the patent are as obvious as a block under a wagon-wheel or rocking-chair. If unevennesses of the saw's lower edge are to be accommodated by the tilting, then the stops must be kept out of the way. If so, the utility of the stops would consist in their preventing the support from tilting so far that the filer would be inconvenienced or the saw possibly injured while the filer was putting the saw on the support, or (on another theory of appellant's), if the machine were in operation and an earthquake or other unexpected jar should occur, in preventing the teeth of the saw from being dragged against or across the too greatly up-tilted support. If the object is to prevent tilting beyond a predetermined point, the means of the patent are as obvious as the stop that limits the swing of a door. But however the stops are to be used, and whether obvious or not, they and every element of claims 3 and 4 were found before Schofield's time in Kinney's support in connection with his swaging machine. As no adaptation beyond known equivalents was made or needed, and as the transfer was from the very same art, the claims must be held void. Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856; Stearns v. Russell, 85 Fed. 229, 29 C. C. A. 121; Chisholm v. Johnson, 115 Fed. 625, 53 C. C. A. 123.

2. The device of patent No. 654,845 is an independent tilting support to be used in upholding the band-saw at the proper level before it enters, and after it leaves, the sharpening machine. It is needless to regard the question of double-patenting presented by the appellees. No invention was required to unfasten the tilting support from the sharpening machine and stand it on an independent base. The alleged novelty in claim 5 of this patent is of course defeated by the references that have been considered in connection with patent No. 654,843?

The appellant claims that great advantages result from the co-operation of the devices of the two patents. But that can help neither, for each must be judged on its own merits.

3. Regarding claim 5 of patent No. 654,844, the feed mechanism was old. Schofield's improvement consisted in his replaceable bearing-blocks for the feed-finger. But, to quote from one of the experts, "whether the parts are put together in one way or the other, whether they are made in one piece with a view to simplicity of manufacture, or in several pieces with a view to ease of repair, is a mere machinist's option."

4. The claims of patent No. 669,251, which are in suit are for means of reversing the motion of the grinding wheel. In view of the skilled mechanic's knowledge of gears, pulleys, belts, and levers, no invention was involved in adapting Hoffman's geared mechanism to the pulley, belt, and lever device of the patent.

The decree is affirmed.